# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Epic Systems Corporation,

       Plaintiff,

    v.

GreatGigz Solutions, LLC,

       Defendant.

Case No. 9:22-cv-80276

## PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

**QUARLES & BRADY LLP**

Kelli A. Edson
Florida Bar No. 179078
QUARLES & BRADY LLP
101 East Kennedy Boulevard, Suite 3400
Tampa, Florida 33602-5195
Tel.: (813) 387-0300
Fax: (813) 387-1800
kelli.edson@quarles.com
lynda.dekeyser@quarles.com
rebecca.wilt@quarles.com
DocketFL@quarles.com

Martha Jahn Snyder, *Pro Hac Vice*
Bryce A. Loken, *Pro Hac Vice*
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: (608) 251-5000
Fax: (608) 251-9166
martha.snyder@quarles.com
bryce.loken@quarles.com

*Counsel for Plaintiff Epic Systems Corporation*

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

        A.      The Parties and the Instant Suit ............................................................. 2

        B.      The Asserted Patents .............................................................................. 3

III.    LEGAL STANDARD .......................................................................................... 5

        A.      The Court May Properly Decide Patent Eligibility on a Rule 12 Motion. ............ 5

        B.      Abstract Ideas Are Ineligible for Patenting Under the Two-Step Test of
                *Alice*. ....................................................................................................... 6

IV.     ARGUMENT ...................................................................................................... 7

        A.      The Asserted Patents Are Directed to Patent-Ineligible Subject Matter............... 7

                1.      The Asserted Claims are directed to an abstract idea. .............................. 7

                2.      The Asserted Claims contain no inventive concept................................. 13

                3.      None of the other claims of the Asserted Patents are patent eligible....... 15

        B.      No Claim Construction Issues or Factual Disputes Prevent the Court from
                Deciding this Issue at this Stage of the Case. ....................................... 17

V.      CONCLUSION................................................................................................ 20

QB\73983910.7

# TABLE OF AUTHORITIES

## Cases

*Adaptive Streaming Inc. v. Netflix, Inc.*,
  836 F. App'x 900, 2020 WL 7334126 (Fed. Cir. 2020) ...................................................... 14

*Alibris v. ADT LLC*,
  2015 WL 5084231 (S.D. Fla. Aug. 28, 2015) ................................................................... 5

*Alice Corporation v. CLS Bank*,
  573 U.S. 208 (2014) .................................................................................... 2, 6, 13, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 5

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ...................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 5

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) .............................................................................. 19, 20

*Black v. Kerzner Int'l Holdings Ltd.*,
  958 F. Supp. 2d 1347 (S.D. Fla. 2013) .......................................................................... 5

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) .............................................................................. 6, 7, 15

*Cleveland Clinic Foundation v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017) ...................................................................................... 6

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ...................................................................... 7, 11, 15, 16

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) .................................................................................... 13

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) .................................................................................... 12

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  2020 WL 3400682, 815 F. App'x 529 (Fed. Cir. 2020) ................................................ 17

*EasyWeb Innov., LLC v. Twitter, Inc.*,
  689 F. App'x 969, 2017 WL 1969492 (Fed. Cir. May 12, 2017) ................................. 11

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ................................................................................ 6, 11

*Enco Sys., Inc. v. DaVincia, LLC*,
  845 F. App'x 953, 2021 WL 855856 (Fed. Cir. 2021) ................................................. 18

*Ex Parte Joao* ("*Joao II*"),
No. 2016-002070, 2017 WL 2303383 (P.T.A.B. May 25, 2017) .................................................. 1

*Ezcurra v. Monsanto Co.*,
2020 WL 5491428 (S.D. Fla. Aug. 7, 2020) ............................................................................... 3

*FairWarning IP LLC v. Iatric Systems, Inc.*,
839 F.3d 1089 (Fed. Cir. 2016) ................................................................................................. 11

*First-Class Monitoring, LLC v. Ups of Am., Inc.*,
389 F. Supp. 3d 456 (E.D. Tex. 2019) ...................................................................................... 17

*Genetic Technologies, Ltd. v. Merial LLC*,
818 F.3d 1369 (Fed. Cir. 2016) .......................................................................................... 2, 5, 6

*Gottschalk v. Benson*,
409 U.S. 63 (1972) .............................................................................................................. 6, 12

*GreatGigz Solutions LLC v. CHRISTUS Health*,
6:21-cv-01310-ADA (W.D. Tex. Feb 22, 2022) ........................................................................ 3

*In re TLI Commc'ns LLC Patent Lit.*,
823 F.3d 607 (Fed. Cir. 2016) ................................................................................................... 14

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ................................................................................................. 13

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
2017 WL 3315279 (D. Del. Aug. 3, 2017) ................................................................................. 1

*Joao Bock Transaction Sys., LLC v. Fid. Nat'l Info. Servs., Inc.*,
122 F. Supp. 3d 1322 (M.D. Fla. 2015) ..................................................................................... 1

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
76 F. Supp. 3d 513 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015) ................................ 1

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
173 F. Supp. 3d 717 (N.D. Ill. 2016) ......................................................................................... 1

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
984 F. Supp. 2d 189 (S.D.N.Y. 2013) ................................................................................. 2, 11

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996) ....................................................... 19

*Mayo Collaborative Services v. Prometheus Labs., Inc.*,
566 U.S. 55 (2012) .................................................................................................................... 13

*Ortega v. Christian*,
85 F.3d 1521 (11th Cir. 1996) .................................................................................................... 5

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938  (E.D. Tex. Mar. 8, 2017) ......................... 7, 16

*Reeves v. United States*,
526 F. Supp. 3d 1226 (S.D. Fla. 2021) ...................................................................................... 3

iii

*S.E.C. v. Dunlap*, No. 01-8437-CIV.,
   2002 WL 1007626 (S.D. Fla. Mar. 27, 2002) ........................................................... 19

*SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ..................................... 2, 5

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017) ................................................................................ 18

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020) ............................................................................. 5, 6

*SkillSurvey, Inc. v. Checkster LLC*,
   178 F. Supp. 3d 247 (E.D. Pa. 2016),
   *aff'd*, 683 F. App'x 930, 2017 WL 1279345 (Fed. Cir. 2017) ............................................ 1, 11

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) ............................................................................. 13

*Two-Way Media Ltd. v. Comcast Cable Communications, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ............................................................................. 15

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ............................................................................... 13

*Walker Digital, LLC v. Google, Inc.*,
   66 F. Supp. 3d 501 (D. Del. 2014) ......................................................................... 2, 11

**Statutes**

35 U.S.C. § 101 ................................................................................................. 6

QB\73983910.7

Pursuant to Rule 12(c), Epic Systems Corporation ("Epic") asks the Court to enter judgment on the pleadings that each of the four patents asserted by GreatGigz Solutions, LLC's ("GreatGigz") are invalid for being patent-ineligible under 35 U.S.C. § 101.

## I.    INTRODUCTION

The four patents at-issue—U.S. Patent Nos. 6,662,194 ("the '194 Patent"), 7,490,086 ("the '086 Patent"), 9,760,864 ("the '864 Patent"), and 10,096,000 ("the '000 Patent") (collectively, the "Asserted Patents")—follow a troubling pattern that the named inventor, Raymond Anthony Joao, has carried out time-and-again through a variety of companies. Mr. Joao (the sole managing member of GreatGigz) has a history of procuring impermissibly abstract patents and then launching serial lawsuits to extract quick monetary settlements until the patents are inevitably found invalid as failing the requirements of § 101.[1] The Asserted Patents fare no better.

The claims of the Asserted Patents are directed to the concept of exchanging and processing information about individuals to schedule and hire them for jobs. These are abstract concepts and not new ones; people have been exchanging information and scheduling jobs for eons. Consequently, courts around the country have invalidated patent claims directed to near-identical ideas. *See, e.g.*, *Jedi Techs., Inc. v. Spark Networks, Inc.*, 2017 WL 3315279, at *7 (D. Del. Aug. 3, 2017) (matching people based on criteria); *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247 (E.D. Pa. 2016), *aff'd*, 683 F. App'x 930, 2017 WL 1279345 (Fed. Cir. 2017) (reference checking job applicants); *Walker Digital, LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 514 (D. Del.

---

[1] *See, e.g.*, *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717 (N.D. Ill. 2016) (granting Rule 12(c) motion; finding claims directed to providing security for vehicles and premises through a computer network impermissibly abstract under § 101); *Joao Bock Transaction Sys., LLC v. Fid. Nat'l Info. Servs., Inc.*, 122 F. Supp. 3d 1322 (M.D. Fla. 2015) (finding claims directed to real-time authorization, notification, and security of financial transactions involving credit cards impermissibly abstract under § 101); *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513 (D. Del. 2014) (same), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015). *See also Ex Parte Joao* ("*Joao I*"), No. 2016-003277, 2017 WL 2377811 (P.T.A.B. May 23, 2017) (rejecting claims directed to processing healthcare information as impermissibly abstract under § 101); *Ex Parte Joao* ("*Joao II*"), No. 2016-002070, 2017 WL 2303383 (P.T.A.B. May 25, 2017) (rejecting claims directed to processing healthcare information to create an insurance claim as impermissibly abstract under § 101).

2014) (activities traditionally carried out by headhunters); *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 191–92 (S.D.N.Y. 2013) (matchmaking).

The claims of the Asserted Patents use conventional computer components to carry out the concepts of exchanging and processing information about individuals to schedule and hire them for jobs. There is nothing inventive about the components, how they are arranged, or how they are used to accomplish the claimed activities. In short, the patents claim mere abstract ideas and fail to imbue them with any inventive concept. Thus, the Asserted Patents fail the requirements for patent-eligible subject matter set forth in § 101, as interpreted in *Alice Corporation v. CLS Bank, International*, 573 U.S. 208, 216 (2014).

This motion is ripe for decision. The claims of the Asserted Patents do not require formal construction for this analysis, as there are no reasonable interpretations that could save the claims from their non-inventive abstractness. No factual issues prevent the Court from deciding this motion now. The specifications teach conventional apparatus and means of carrying out the claimed activities; no discovery is needed on that point.

Patent litigation is expensive and time-consuming. As such, courts regularly grant motions on the pleadings where, as here, the asserted patents are facially directed to patent-ineligible subject matter. *Genetic Technologies, Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Early resolution of this motion will save both the Court and the parties from needlessly wasting time and resources.

## II.    BACKGROUND[2]

### A.    The Parties and the Instant Suit

Epic is a leader in the healthcare software industry and offers solutions to manage electronic health records ("EHR"). (*See* Dkt. 15, at 18, ¶ 44).[3]

---

[2] Unless otherwise noted, because the Court must decide this motion on the factual allegations in the pleadings, this Background section cites to Epic's Complaint, which attaches the four Asserted Patents, and GreatGigz' Counterclaims, which assert that Epic infringes those four patents.

[3] Epic disputes that any of its software solutions infringe any asserted claim. (Dkt. 20, Answer to Counterclaims, ¶¶ 45-89).

2

GreatGigz, a Florida Limited Liability Company has not alleged that it provides any goods or services; rather, it appears to be in the business of asserting patents for profit.

Epic commenced the present action against GreatGigz in response to GreatGigz suing Epic's customer, CHRISTUS Health, in the Western District of Texas, wherein GreatGigz alleges that CHRISTUS Health's use of Epic's software infringes the Asserted Patents. (Dkt. 1); *see also GreatGigz Solutions, LLC v. Christus Health*, No. 6:21-cv-01310-ADA, Dkt. 1 (W.D. Tex. Dec. 16, 2021).[4] GreatGigz filed its answer and affirmative defenses to Epic's Complaint, along with counterclaims, on April 14, 2022. (Dkt. 15). Epic closed the pleadings when it answered the counterclaims on May 6, 2022. (Dkt. 20).

GreatGigz' enforcement against Epic's customer, and now Epic, is part of a larger litigation campaign by GreatGigz, implicating at least 27 other defendants across a wide range of industries. Appendix A summarizes these suits.[5]

### B.    The Asserted Patents

Each of the Asserted Patents lists Raymond Anthony Joao as the sole inventor. The '194 Patent, entitled "Apparatus and method for providing recruitment information," was filed on July 7, 2000, and issued on December 9, 2003. The remaining Asserted Patents are continuations of the '194 or each other and thus they all share a specification. Each of these continuations is entitled "Apparatus and method for providing job searching services recruitment services and/or recruitment-related services."

The shared specification teaches that the claimed inventions are directed to "managing work schedules, and/or for maintaining information regarding work schedules for an individual or entity, including, but not limited to any job applicant, temporary worker, independent contractor,

---

[4] A motion to stay CHRISTUS Health's case pending the outcome of this present lawsuit pursuant to the customer suit exception is currently pending. *GreatGigz Solutions LLC v. CHRISTUS Health*, 6:21-cv-01310-ADA, Dkt. 9 (W.D. Tex. Feb 22, 2022).

[5] "In rendering judgment, a court may consider the substance of the pleadings and any judicially noticed facts." *Reeves v. United States*, 526 F. Supp. 3d 1226, 1232 (S.D. Fla. 2021); *Ezcurra v. Monsanto Co.*, 2020 WL 5491428, at *2 (S.D. Fla. Aug. 7, 2020).

and/or freelancer." ('194 Pat., 5:23-27).[6] "An employer and/or hiring entity can obtain information regarding the work, temporary assignment, and/or project or assignment, schedules for any individual or entity utilizing the present invention." (*Id.* at 5:27-30). Employees and self-employed individuals may maintain "a work schedule and/or working calendar which can provide information regarding days and/or time periods of employment and/or engagement as well as days and/or time periods of availability." (*Id.* at 15:23-33). To accomplish these tasks, the specification teaches: (a) storing various job recruitment and job search request information in a memory device; (b) processing the recruitment information regarding the job search request; (c) generating a message regarding the recruitment information; and (d) transmitting that message to a communication device. (*Id.*, Abstract, 4:3-6:22, 25:7-28:15).

The shared specification does not teach any novel techniques for *how* to store, process, generate, or transmit information. Per the specification, "[t]he present invention utilizes the technologies and advances in information technology and in communication technology in order to provide these [scheduling/staffing] services in a network environment." (*Id.* at 3:21-24). These "technologies" and "advances" are nothing more than conventional computer components. Again, per the specification: "the central processing computer 10, in the preferred embodiment, ***can be any suitable computer***" and "the individual computer 20" and "the employer computers 30" each "may be a personal computer or other communication device" including "a personal computer, a hand-held computer, a palmtop computer, a laptop computer, a personal communication device, a personal digital assistant, a telephone, a digital telephone, a display telephone, a video telephone, a videophone, a 3G telephone, a television, an interactive television, a beeper, a pager, and/or a watch." (*Id.*, 12:19-13:11 (emphasis added)). Likewise: "The present invention may be utilized in ***any communication network*** such as the Internet, the World Wide Web, a telecommunications network, and/or any other communication network described herein and/or otherwise." (*Id.* at 3:62-4:2 (emphasis added)).

The claims of the Asserted Patents encompass these broad concepts, albeit from different

---

[6] Unless otherwise noted, Epic cites to the specification of the '194 Patent for simplicity.

perspectives. The Asserted Claims of the '194, '864, and '000 Patents[7] are directed to storing, receiving, processing, and transmitting information to schedule jobs. *See infra*, pp. 8-11. The asserted claim of the '086 Patent is directed to similar subject matter, but from a job searching perspective. *See infra*, pp. 11-12. GreatGigz acknowledges the overlap in the asserted claims, noting that they each involve "receiving," "stor[ing]," "processing," "generating," and transmitting" the information. (*See* Dkt. 15, Counterclaims, ¶¶ 44, 49-54, 61-65, and 71-76).

## III.   LEGAL STANDARD

### A.   The Court May Properly Decide Patent Eligibility on a Rule 12 Motion.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings under Rule 12(c) is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law. *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996).

A motion under Rule 12(c) "is governed by the same standard as a motion to dismiss for failure to state a claim on which relief may be granted" under Rule 12(b). *Alibris v. ADT LLC*, 2015 WL 5084231, at *4 and n.7 (S.D. Fla. Aug. 28, 2015) (citing *Black v. Kerzner Int'l Holdings Ltd.*, 958 F. Supp. 2d 1347, 1349 (S.D. Fla. 2013)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*; *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).").

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12[] motion." *Genetic Techs.*, 818 F.3d at 1373 (citation omitted); *see also SAP America*, 898 F.3d at 1166 (collecting recent cases). "[C]laim construction is not an inviolable prerequisite to validity determinations under § 101."

---

[7] On or around May 11, 2022, GreatGigz served its Preliminary Infringement Contentions identifying the Asserted Claims as follows: '194 Patent – claims 25, 26, 27 & 55; '086 Patent – claim 18; '864 Patent – claims 1 & 4; '000 Patent – claims 1 & 2.

*Genetic Techs.*, 818 F.3d at 1374. The Federal Circuit has also "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Foundation v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting cases and affirming dismissal of complaint when plaintiff "provided no proposed construction of any terms").

> **B.    Abstract Ideas Are Ineligible for Patenting Under the Two-Step Test of *Alice*.**

Patent-eligible subject matter is "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, laws of nature, natural phenomena, and abstract ideas are patent ineligible. *Alice*, 573 U.S. at 216. Courts have identified types of claims likely to be patent ineligible, including those directed to "long-standing, well-known method[s] of organizing human behavior," *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016), "mental processes," *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016), and "mathematical formula[s]" or an "algorithm itself." *Gottschalk v. Benson*, 409 U.S. 63, 72 (1972).

To determine patent-eligibility, courts apply the two-step analysis set forth in *Alice*. Step one inquires whether the claim is directed to an abstract idea. 573 U.S. at 218. Regarding claims involving computerized systems, courts "consider whether the 'focus of the claims' is on a 'specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285–86 (Fed. Cir. 2018) (quoting *Enfish*, *infra*); *see also Simio*, 983 F.3d 1353 at 1359 (must consider the claim's "key advance"). "If a claimed invention only performs an abstract idea on a generic computer, the invention is directed to an abstract idea at step one." *BSG Tech*, 899 F.3d at 1285.

If the claim is directed to an abstract idea, courts move to step two and "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221. This "transformation into a patent-eligible application requires more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 221 (internal citations omitted). "[I]f a

claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech*, 899 F.3d at 1285–86. "Narrowing or reformulating an abstract idea does not add 'significantly more' to it." *Id.*

## IV.    ARGUMENT

### A.    The Asserted Patents Are Directed to Patent-Ineligible Subject Matter.

The claims of the Asserted Patents are directed to the concept of exchanging and processing information about individuals to schedule and hire them for jobs. These are quintessential patent-ineligible abstract concepts.

#### 1.    The Asserted Claims are directed to an abstract idea.

The Asserted Claims of the '194, '864, and '000 Patents are directed to essentially the same subject matter of storing, receiving, processing, and transmitting information to schedule jobs. As is the case here, where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).[8] Charts showing the overlapping elements between these representative claims and the additional claims asserted in GreatGigz' preliminary infringement contentions are included in Appendix G.

As shown in the chart of representative claims[9] below, each claim merely recites an abstract prototypal human activity of matching employers with employees to schedule jobs and the generic

---

[8] *See, e.g., Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea"); *see also Alice*, 573 U.S. at 224–26 (invalidating over 200 claims across four patents based on two representative claims).

[9] The similarities between the representative claims and the Asserted Claims are showcased in Appendix G. Like the similarities in the representative claims *across* the Asserted Patents exhibited above, the similarities between the representative claims and the remaining claims show that all of the claims are directed to the same basic abstract idea without reliance on any unconventional use of technology. Similarly, Appendices B-E compare the representative claim from each Asserted Patent to all independent claims for their respective Asserted Patent, regardless whether the claims were asserted here.

computer used to perform it, in particular an "apparatus" that is able to store work scheduling information (step a); receive a request for work scheduling information (step b); process that request, generate a message in response to that request, and transmit that message (steps c and d); and then process a second request, with potential follow-on message-generating and transmitting steps (step e):

| '194 Patent | '864 Patent | '000 Patent |
|---|---|---|
| 25. An apparatus for providing recruitment information, comprising: | 1. An apparatus, comprising: | 1. An apparatus, comprising: |
| [a] a memory device for ***storing at least one of work schedule information and scheduling information*** for at least one of an individual, an independent contractor, a temporary worker, and a freelancer; | [a] a memory device or a database, wherein the memory device or the database ***stores work schedule information or scheduling information*** of or for a plurality of individuals, independent contractors, temporary workers, or freelancers; | [a] a memory device, wherein the memory device ***stores work schedule information or scheduling information*** for an employer or a hiring entity, or for an individual, an independent contractor, a temporary worker, or a freelancer; |
| [b] a receiver for ***receiving a first request***, wherein the first request contains information regarding a request to obtain at least one of work schedule information and scheduling information for the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, wherein the first request is received from a first communication device associated with an employer or hiring entity; | [b] a receiver, wherein the receiver ***receives a first request***, wherein the first request contains information regarding a request to obtain work schedule information or scheduling information of or for an individual, an independent contractor, a temporary worker, or a freelancer, from among the plurality of individuals, independent contractors, temporary workers, or freelancers, wherein the first request is received from a first communication device associated with an employer or a hiring entity; | [b] a receiver, wherein the receiver ***receives a first request***, wherein the first request contains information regarding a request to obtain work schedule information or scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer, wherein the first request is transmitted from a first communication device associated with an employer or hiring entity or associated with an individual, an independent contractor, a temporary worker, or a freelancer; |
| [c] a processing device for ***processing information*** contained in the first request, wherein the processing device ***generates a first message*** containing the at least one of work schedule information and scheduling information for the at least one of an | [c] a processor, wherein the processor is associated with a | [c] a processing device, wherein the processing device is specially programmed for |

| '194 Patent | '864 Patent | '000 Patent |
|---|---|---|
| individual, an independent contractor, a temporary worker, and a freelancer; and<br><br>[d] a transmitter for *transmitting the first message* to the first communication device,<br><br>[e] wherein the receiver *receives a second request*, wherein the second request contains information for at least one of reserving, engaging, and requesting, the services of the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, wherein at least one of the processing device *processes the information* contained in the second request and at least one of reserves, engages, and requests, the services of the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, the processing device *generates a second message* containing information regarding the second request, and the transmitter *transmits a second message* containing information regarding the second request to a second communication device associated with the at least one of an individual, an independent contractor, a temporary worker, and a freelancer. | website, and further wherein the processor is specially programmed to *process or to provide job search information, recruitment information, or recruitment-related information*, wherein the processor processes information contained in the first request, wherein the processor or the apparatus *generates a first message* in response to the first request, and wherein the first message contains the work schedule information or the scheduling information of or for the individual, the independent contractor, the temporary worker, or the freelancer; and<br><br>[d] a transmitter, wherein the transmitter *transmits the first message* to the first communication device on, over, or via, the Internet or the World Wide Web,<br><br>[e] wherein the apparatus *receives a second request*, wherein the second request contains information for reserving, engaging, or requesting, the services of the individual, the independent contractor, the temporary worker, or the freelancer, wherein the apparatus *processes the information* contained in the second request and *generates a second message* containing information regarding the second request, and further wherein the apparatus transmits the second message | *processing information* contained in the first request, wherein the processing device *generates a first message* containing the work schedule information or the scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer; and<br><br>[d] a transmitter, wherein the transmitter *transmits the first message* to the first communication device or to a second communication device,<br><br>[e] wherein the apparatus *processes information* contained in a second request, wherein the second request contains information for offering services of the individual, the independent contractor, the temporary worker, or the freelancer, to the employer or hiring entity, or contains information for the employer or hiring entity reserving or requesting the services of the individual, the independent contractor, the temporary worker, or the freelancer, wherein the information contained in the second request is based on the work schedule information or the scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer, contained in the first message. |

QB\73983910.7

| '194 Patent | '864 Patent | '000 Patent |
|---|---|---|
| | to a second communication device, wherein the second communication device is associated with the individual, the independent contractor, the temporary worker, or the freelancer. | |
| ('194 Pat., Cl. 25 (emphasis and brackets added)). | ('864 Pat., Cl. 1 (emphasis and brackets added)). | ('000 Pat., Cl. 1 (emphasis and brackets added)). |

Asserted claim 18 of the '086 Patent is directed to similar subject matter, but from a job searching perspective. Claim 18 also recites "an apparatus" that is able to store information related to job opportunities (step a); process a request for job employment opportunities and generate a message in response (step b); and then transmit that message to a hiring entity (step c):

18. An apparatus, comprising:

[a] a memory device, wherein the memory device **_stores information regarding an individual_** available for at least one of applying for and interviewing for at least one of a job, a job opportunity, and a hiring need, and further wherein the memory device stores information regarding a recruitment search request or inquiry;

[b] processing device, wherein the processing device **_processes the information_** regarding a recruitment search request or inquiry upon a detection of an occurrence of a searching event, wherein the searching event is an occurrence of at least one of a job posting by at least one employer or at least one hiring entity, a posting of new or revised data or information from at least one individual or a group of individuals, a news release of a business event, an employment-related event, an economic report, industry-specific news, an event which creates an interest by at least one employer or at least one hiring entity to fill a position, and an event which creates an interest by at least one individual to seek a position, wherein the processing device automatically detects the occurrence of the searching event, wherein the processing device utilizes the information regarding an individual stored in the memory device in processing the information regarding a recruitment search request or inquiry, and further wherein the processing device **_generates a message_** containing information regarding the individual, wherein the message is responsive to the recruitment search request or inquiry; and

[c] a transmitter, wherein the transmitter **_transmits the message_** to a communication device associated with an employer or hiring entity.

('086 Pat., Cl. 18).

In short, each of the representative claims of the Asserted Patents is directed to storing, receiving, processing, and/or transmitting information in a work scheduling or job searching

10

context, akin to the activities of an employer-employee matchmaker.

These concepts of sending/receiving information and/or processing/generating information, even when considered in the employer-and-employee matchmaking context, are abstract as a matter of law. *Elec. Power Grp.*, 830 F.3d at 1354 (finding "a process of gathering and analyzing information of a specified content, then displaying the results" abstract); *Content Extraction*, 776 F.3d at 1347 ("'1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory'" ineligible abstract idea); *FairWarning IP LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) ("collect[ing] information," "analyz[ing] the information according to one of several rules," and "provid[ing] notification" abstract); *EasyWeb Innov., LLC v. Twitter, Inc.*, 689 F. App'x 969, 971, 2017 WL 1969492, at *2 (Fed. Cir. May 12, 2017) (idea of sending a message an abstract method of organizing human activities).

Matching employers with employees to schedule jobs is a time-honored method of organizing human activity, and therefore an abstract idea under Section 101. *Jedi Techs., Inc. v. Spark Networks, Inc.*, 2017 WL 3315279, at *7 (D. Del. Aug. 3, 2017) (finding claims "drawn to the abstract idea of matching people based on criteria such as personality traits or location" invalid since the "concept of matchmaking is certainly not novel and has been performed by humans for a very long time"); *SkillSurvey, Inc.*, 178 F. Supp. 3d 247 (finding "the abstract idea of reference checking job applicants" is "a well–known method of organizing human activity" and using "generic computer technology does not render this otherwise abstract idea inventive"); *Walker Digital, LLC*, 66 F. Supp. 3d at 514 (finding claims directed to an abstract idea because all of the claim's steps have been "historically practiced by matchmakers and headhunters"); *Lumen View Tech.*, 984 F. Supp. 2d at 191–92 (finding claims directed to the unpatentable abstract idea "of bilateral and multilateral matchmaking using a computer" and noting that "[m]atchmakers have been doing this for millennia").

The claimed apparatuses are directed to merely automating matching employees to employers searching for one another. ('194 Pat., 6:45-47 ("The apparatus and method of the present invention can be utilized as an electronic and/or network-based recruiting apparatus and/or

11

clearinghouse."); *see also id.* at 11:17-20 ("The present invention also provides a centralized apparatus, and/or clearinghouse, for providing and/or for facilitating the herein-described efforts, services, and/or activities."). In particular, as these quoted portions indicate, the Asserted Patents instruct that they are directed to the concept of this automated matching being done by clearinghouse or a matchmaker, which the Federal Circuit has held to be a patent-ineligible abstract concept. *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) ("The claim 'explains the basic concept' of processing information through a clearinghouse, just as claim 1 in [*Bilski v. Kappos*, 561 U.S. 593 (2010) ("*Bilski II*")] 'explained the basic concept of hedging.… Neither Dealertrack nor any other entity is entitled to wholly preempt the clearinghouse concept.").[10] Just as in *Dealertrack*, the claims here merely recite apparatuses for the abstract use of a clearinghouse using generic computer components. *Id.* at 1333-34 ("The claims here do not require a specific application, nor are they tied to a particular machine…. [H]ere, the claims cover a clearinghouse process using any existing or future-devised machinery."). And again, as in *Dealertrack*, the restriction of the clearinghouse to a specific field of use—here, job searching or matching field— is insufficient to confer eligibility to the claims:

> Lastly, Dealertrack argues that the claim is patent eligible because it covers the use of a clearinghouse only in the car loan application process, and not all uses thereof…. The restriction here is precisely the kind of limitation held to be insufficient to confer patent eligibility in *Bilski II*. The notion of using a clearinghouse generally and using a clearinghouse specifically to apply for car loans, like the relationship between hedging and hedging in the energy market in *Bilski II*, is of no consequence without more.

*Id.* at 1334.

In addition to being considered apparatuses for abstract methods of organizing human activity, the claims also recite abstract mental processes. *Gottschalk*, 409 U.S. at 67 (holding that computational methods which can be performed entirely in the human mind are the types of "basic

---

[10] As noted above, GreatGigz' has sued numerous defendants alleging infringement of the Asserted Patents. In several of those complaints, including the lawsuit it filed against Epic's customer CHRISTUS Health, GreatGigz admits that the claims are directed to a "clearinghouse." *See GreatGigz Solutions, LLC v. CHRISTUS Health*, No. 6:21-cv-01310-ADA, Dkt. 1 at p. 6 (W.D. Tex. Dec. 16, 2021) ("The inventions as claimed overcome the deficiencies in the art by establishing an unconventional central clearinghouse for job searching services.").

tools of science and technological work" that no one "has [a] claim to a monopoly" on); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("[action] that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016) ("While the Supreme Court has altered the § 101 analysis…in cases like *Mayo* and *Alice*, we continue to 'treat analyzing information by steps people go through in their minds,…without more, as essentially mental processes within the abstract-idea category."). Simply automating these matchmaking activities with generic computers does not make the concepts any less abstract. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) ("[A]dding a computer to otherwise conventional steps does not make an invention patent-eligible. Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis.") (internal citation omitted); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (holding claims abstract where "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper."). [cite]

In sum, the Asserted Claims are directed to an abstract idea and thus the analysis turns to step 2 of the *Alice* framework.

## 2.    The Asserted Claims contain no inventive concept.

The Asserted Claims do not contain any inventive concept that transforms their abstract ideas into patent-eligible subject matter.

The claims do not recite "[any] additional features" that are "more than well-understood, routine, conventional activity." *Ultramercial,* 772 F.3d at 715. Rather, the claims recite generic computer components like "memory device," "receiver," "processing device," "and "transmitter" (*e.g.*, '194 Pat., 44:39-45:11), which is insufficient to transform an abstract idea into eligible subject matter. *Alice*, 573 U.S. at 222 ("'Simply appending conventional steps, specified at a high level of generality,' [is] not '*enough*' to supply an 'inventive concept.'") (quoting *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. 55, 82, 77, 72 (2012) (emphasis in original)).

13

Even when read in light of the specification's teachings, the recited components are generic to the point of being interchangeable ('194 Pat., at 18:36-47 ("[E]ach of the individual computer(s) 20 and employer computer(s) 30, include the same, similar, or analogous, components and/or peripheral devices as described herein for the central processing computer 10…any individual computer(s) 20 or employer computer(s) 30, may be the same as, or be similar to, the central processing computer 10. In this regard…each of the individual computer(s) 20 and/or…employer computer(s) 30 can have the same or similar components as the central processing computer 10.")), which is indicative of their conventional nature. *See Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 904, 2020 WL 7334126, at *3 (Fed. Cir. 2020) (claims reciting only generic computer hardware, such as a "processor" are not inventive). The generic components do not supply an inventive concept and instead "merely provide a generic environment in which to carry out the abstract idea." *In re TLI Commc'ns LLC Patent Lit.*, 823 F.3d 607, 611 (Fed. Cir. 2016).

The shared specification does not teach any novel means of receiving, storing, processing, generating, or transmitting the job information manipulated by the claimed components. It simply teaches that any conventional computer may complete the tasks: "The central processing computer 10 … ***can be any suitable computer***…for providing service for the various computers associated with the … employees, … [and] employers." ('194 Pat., 44:39-45:11 (emphasis added); *see also id.* at 12:38-63 ("The apparatus 100…includes one or more individual computers 20" and "one or more employer computers 30," each "may be a personal computer or other communication device suitable for allowing the individual to interact with the central processing computer(s) 10.")). Not only are the computers and their claimed features conventional, but the computers can even be the same as one another, further underscoring the fact that the Asserted Patents teach nothing novel. *Id.* at 18:36-47 ("[E]ach of the individual computer(s) 20 and employer computer(s) 30, include the same, similar, or analogous, components and/or peripheral devices as described herein for the central processing computer 10…any individual computer(s) 20 or employer computer(s) 30, may be the same as, or be similar to, the central processing computer 10. In this regard…each of the individual computer(s) 20 and/or…employer computer(s) 30 can have the same or similar components as the central processing computer 10.").

14

Even if considered as "as an ordered combination," the claims add nothing not already present when considering the apparatuses' constituent elements separately. *Alice*, 573 U.S. at 225-226. The elements receive, store, and process information, and transmit processor-generated messages regarding that information. While the order of the tasks may be logical, the claims do not combine the tasks to improve the functioning of effectuating job searches and/or matchmaking, they simply perform the standard. *See id*. In fact, the shared specification acknowledges that "[t]he present invention utilizes the technologies and advances in information technology and in communication technology in order to provide these services in a network environment." ('194 Pat. 3:21-24).

Thus, the Asserted Claims do not contain an inventive concept sufficient to transform the abstract idea into an eligible claim. They are, therefore, invalid under 35 U.S.C. § 101.

### 3.    None of the other claims of the Asserted Patents are patent eligible.

The other independent claims of the Asserted Patents share the storing, processing, receiving, and transmitting elements discussed above for representative asserted claims.[11] Because each of these independent claims contain the same elements as those discussed above and are not more than the sum of their individual parts, they likewise are directed to an abstract idea and lack an inventive concept. *Alice*, 573 U.S. at 225-226.

All other claims of the Asserted Patents depend from either the Asserted Claims or the remaining independent claims and add elements that attempt to narrow the abstract ideas by specifying minor alterations or token pre- or post-solution limitations. However, narrowing an abstract idea does not make it any less abstract or any more inventive such that any asserted dependent claim can survive Epic's § 101 arguments. *See BSG Tech*, 899 F.3d at 1287 ("a claim is not patent eligible merely because it applies an abstract idea in a narrow way") (citing *Two-Way Media Ltd. v. Comcast Cable Comms., LLC*, 874 F.3d 1329 (Fed. Cir. 2017)); *Content Extraction*, 776 F.3d at 1349 (minor alterations do not change abstract nature). For example, the claims vary

---

[11] Appendices B-E contain charts that compare each of the '194, '086, and '864 Patents' representative claim to the independent claims for each patent.

with respect to the protocol for how the "contract" is formed, or how a "deal" is reached, such as by: transmitting a proposed "contract" to an individual (*see, e.g.*, '194 Patent Claim 1); submitting an "offer" (*see, e.g.*, '194 Pat., Cl. 38 and 42-44) to a hiring entity or contractor; "accepting or rejecting the offer" (*see, e.g.*, '194 Pat., Cl. 56); and/or "reserving, engaging, and requesting…services" (*see, e.g.*, '194 Pat., Cl. 25 and 55). These minor alterations, however, are not material to the eligibility analysis and, like the independent claims, do not save the dependent claims from the § 101 analysis because the dependent claims are all directed to substantially the same abstract concepts. *Content Extraction*, 776 F.3d at 1347-48.

Additionally, Independent Claims 1 and 13 of the '194 Patent overlap substantially because they both claim an apparatus having: a "memory device" that stores information about an "individual" (e.g., a resume) and information about an open "job"; a "processing device" for correlating the stored information; and a "transmitter" for sending a message either to an individual or to an employee about a hiring opportunity. ('194 Pat., 41:56–42:11, 43:15–37). Claim 1 processes a "job search request" and then sends a "message" about a job opening to an individual. (*Id.* at 41:56–42:11). Claim 13 processes a "recruitment search request," and sends a "message" regarding an individual to an employer. (*Id.* at 43:15-37). The differences between these claims are insubstantial with respect to eligibility, as both are drawn to the same abstract idea of exchanging recruitment information to hire employees or independent contractors. Appendix F sets forth additional pre- and post-solution claims.

Because all claims of the Asserted Patents are directed to the same abstract ideas and lack inventive concepts, they are invalid under 35 U.S.C. § 101. *See, e.g., Phoenix Licensing,* 2017 WL 1065938, at *8–9  (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea"); *Alice*, 573 U.S. at 224–26 (invalidating over 200 claims across four patents based on 2 representative claims).

**B.** **No Claim Construction Issues or Factual Disputes Prevent the Court from Deciding this Issue at this Stage of the Case.**

This motion is ripe for decision now based on the pleadings. No factual issue or claim construction is necessary for the Court to find that the claims of the Asserted Patents are directed to patent-ineligible subject matter.

While GreatGigz included a number of extraneous and unsupported assertions in its counterclaims regarding the purported unconventionality of the Asserted Patents, GreatGigz cannot "avoid dismissal simply by reciting in the complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself." *First-Class Monitoring, LLC v. Ups of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019). "Any allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 2020 WL 3400682, at *8, 815 F. App'x 529, 538 (Fed. Cir. 2020) (internal quotations omitted).

The claims do not require formal construction for this analysis because no reasonable construction saves the claims from their abstractness. While the claims invoke some employment industry terminology, these terms are readily understood as the specifications of each patent provide explicit definitions. ('194 Pat., 11:45-47 (defining 'individual,' 'employee,' 'prospective employee,' 'applicant,' 'contractor,' 'independent contractor,' 'temp,' 'temporary employee,' 'freelancer') and 11:54-55 (defining 'employer,' 'hiring entity,' 'company,' 'business').

No factual issues prevent the Court from deciding this motion now. The specifications themselves teach that the apparatus and the means of carrying out the claimed methods are conventional. ('194 Pat., 3:60-4:10 (explaining that "the apparatus can include a central processing computer or server computer, at least one or more individual computers and at least one or more employer computers. Each of the herein-described computers may communicate with any and all of the computers…of the present invention" and "[e]ach of the central processing computer(s), the individual computers, and/or the employer computers can include any and/or all components, peripherals, hardware, and/or software, for facilitating the use thereof in a manner consistent with

17

the present invention as described herein. The central processing computer may also include…a database(s) and/or other storage and/or memory device(s)" as being or as employing conventional components.). These teachings are sufficient to decide this motion; no discovery is needed. *See Enco Sys., Inc. v. DaVincia, LLC*, 845 F. App'x 953, 958, 2021 WL 855856, at *4 (Fed. Cir. 2021) (citing *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("In ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." (citation omitted))).

This is especially true in light of GreatGigz' proposed constructions for the terms "processing device/processor" and "searching event," because the proposed constructions do not support any legitimate arguments that can rebut or save the Asserted Patents under Section 101. The facts necessary for the Court to rule on Epic's Rule 12(c) Motion are contained within the pleadings including because the Asserted Patents' shared specification teaches the apparatus and means of carrying out the claimed methods as being conventional (*see, e.g.*, the '194 Patent, 44:39-45:11 ("The central processing computer 10…can be any suitable computer…for providing service for the various computers associated with the…employees,…[and] employers."); *id.* at 12:38-63 ("The apparatus 100…includes one or more individual computers 20" and "one or more employer computers 30," each "may be a personal computer or other communication device suitable for allowing the individual to interact with the central processing computer(s) 10.")); and *id.* at 18:36-47 ("[E]ach of the individual computer(s) 20 and employer computer(s) 30, include the same, similar, or analogous, components and/or peripheral devices as described herein for the central processing computer 10…any individual computer(s) 20 or employer computer(s) 30, may be the same as, or be similar to, the central processing computer 10. In this regard…each of the individual computer(s) 20 and/or…employer computer(s) 30 can have the same or similar components as the central processing computer 10.").[12]

---

[12] In deciding a motion on the pleadings, "the Court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. Further, where the plaintiff

Having now received GreatGigz' proposed construction, Epic has confirmed that they are the same as those GreatGigz proposed in *Maplebear*, which the Court affirmatively found did not serve as a basis to hold up a decision on the Section 101 argument: (a) "processing device/processor" means "a processor programmed to perform a recruitment search upon detection of an occurrence of a searching event" and (b) "searching event" means "the occurrence of a new job posting by an employer, the posting of new and/or revised data and/or information from an individual seeking a position, and/or an event that may create an interest on behalf of an employer to fill a position and/or create an interest on behalf of an individual to seek a position." (Loken Decl., Ex. A); *Maplebear*, Case No. 9:21-cv-81998, Dkt. 52.

GreatGigz' proposed constructions for "processing device" and "searching event" do not save the Asserted Patents from Epic's Section 101 arguments. For example, even adopting GreatGigz' proposed construction of "processing device/processor" does not change that the structure taught by the shared specification for the processor is a general purpose computer. And programming that general purpose computer to perform a conventional search that could otherwise be done by a human upon receiving a notification of an event does not save GreatGigz from the fact that the affected claims are directed to abstract ideas.

Thus, this case is unlike *Berkheimer v. HP Inc.*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." 881 F.3d 1360, 1369 (Fed. Cir. 2018). There, the Federal Circuit examined whether the claims captured the improvement described in the specification. For those claims that recited the alleged improvement, the Federal Circuit found a genuine "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id.* But where the claims did not recite the purportedly inventive feature, the Federal Circuit

---

refers to certain documents in the complaint and these documents are central to the plaintiff's claim, ... the Court may consider the documents part of the pleadings for purposes" of dismissal. *S.E.C. v. Dunlap*, No. 01-8437-CIV., 2002 WL 1007626, at *1 (S.D. Fla. Mar. 27, 2002) (Middlebrooks, J.) (internal citations and quotation marks omitted); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 987 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996) ("specification and prosecution history of a patent are public records.").

concluded that they were directed to patent-ineligible subject matter under § 101. *Id.* Here, neither the claims nor the specification describes any unconventional components or use of conventional components in some unconventional manner.

Accordingly, the claims' eligibility is ripe for the Court's consideration, and the Asserted Patents should be found invalid for failing to claim patent-eligible subject matter.

## V.   CONCLUSION

For the foregoing reasons, Epic respectfully requests that the Court GRANT this motion and find that the claims of the '194, '086, '864, and '000 Patents are invalid, enter judgment in favor of Epic, and dismiss GreatGigz' counterclaims with prejudice.

Dated: June 23, 2022

Respectfully submitted,

QUARLES & BRADY LLP

*/s/ Kelli A. Edson*
Kelli A. Edson
Florida Bar No. 179078
QUARLES & BRADY LLP
101 East Kennedy Boulevard, Suite 3400
Tampa, Florida 33602-5195
Tel.: (813) 387-0300
Fax: (813) 387-1800

kelli.edson@quarles.com
lynda.dekeyser@quarles.com
rebecca.wilt@quarles.com
DocketFL@quarles.com

Martha Jahn Snyder, *Pro Hac Vice*
Bryce A. Loken, *Pro Hac Vice*
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: (608) 251-5000
Fax: (608) 251-9166
martha.snyder@quarles.com
bryce.loken@quarles.com

*Counsel for Plaintiff Epic Systems Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served on June 23, 2022 with a copy of this document via the Court's CM/ECF system:

Marc J. Kesten, P.L.
Marc J. Kesten
9220 NW 72nd Street
Parkland, FL 33067
marc@kestenlex.com
(954) 600-9500

Garteiser Honea, PLLC
René A. Vasquez
119 West Ferguson
Tyler, Texas 75702-7203
rvazquez@ghiplaw.com
ghgreatgigz@ghiplaw.com
(415) 785-3762

*/s/ Kelli A. Edson*
Kelli A. Edson

21